## El Pueblo *v.* Calero et al.

Apelación procedente de la Corte de Distrito de Aguadilla.

No. 373.—Resuelto en febrero 12, 1912.

Derecho Penal—Atentado a la Vida con Intención de Cometer Asesinato—Circunstancias Constitutivas de Asesinato — Premeditación.—En una acusación de atentado a la vista con intención de cometer asesinato no es necesario alegar la premeditación ni ninguno de los elementos constitutivos de asesinato.

Id.—Instrucciones del Juez al Jurado—Examen de la Prueba.—Examinadas las instrucciones del juez al jurado en el caso de autos en relación con la prueba practicada, el Tribunal Supremo resolvió que la corte inferior interpretó correctamente la prueba practicada y que las instrucciones fueron ajustadas a la ley.

Id.—Errores Insignificantes—Revocación de la Sentencia.—Es regla general que los errores insignificantes que no afectan al resultado del juicio no pueden servir de base para la revocación de una sentencia.

Id.—Errores en el Procedimiento—Prueba Plena de la Culpabilidad de los Acusados.—Es un principio aceptado por este tribunal y consignado en nuestros estatutos, que los errores de procedimiento que se cometan durante el curso del caso no pueden producir la revocación de una sentencia cuando la prueba de la culpabilidad del acusado es abrumadora y lleva a la conclusión inevitable de que el veredicto no puede ser otro sino de culpabilidad, aun cuando no se hubiera cometido error alguno en el procedimiento.

Los hechos están expresados en la opinión.

Abogados de los apelantes: *Sres. José de Diego y Juan B. Soto.*

Abogado del apelado: *Sr. Charles E. Foote, Fiscal.*

El Juez Asociado Sr. MacLeary, emitió la opinión del tribunal.

Se inició esta causa ante la Corte de Distrito de Aguadilla
por virtud de una acusación formulada por el fiscal de aquel
distrito en la que imputaba a los acusados Francisco Calero
y Juan Calero la comisión de un delito de atentado a la vida,
alegando en la referida acusación, que en uno de los días del
mes de enero del año 1911, y en Aguadilla, los acusados, ar-
mados de cuchillos y con intención maliciosa y criminal y
alevosamente, atacaron a Eugenio Chacón, causándole varias
heridas con intención de matarlo. Al serles leída la acusa-
ción a los acusados, éstos la negaron, celebrándose el juicio an-
te un jurado, que después de oir la prueba, los informes de los
abogados y las instrucciones de la corte, declaró culpables a
dichos acusados del delito de atentado a la vida. De con-
formidad con dicho veredicto, la corte condenó a cada uno de
los acusados a cinco años de presidio, con trabajos forzados y
pago de costas. Contra esa sentencia interpusieron los acu-
sados recurso de apelación para ante este tribunal, y elevados
los autos a esta corte, los que contienen el legajo de la senten-
cia con las instrucciones dadas por el juez al jurado, y una
exposición del caso en donde aparecen todas las declaraciones
de los testigos, tanto de la acusación como de la defensa. Los
apelantes y el apelado presentaron alegatos escritos en esta
corte, celebrándose la vista de la causa ante este tribunal, en
la que informaron oralmente distinguidos letrados que no
habían firmado los alegatos escritos ni tomado parte en el
juicio celebrado en la corte inferior.

En el alegato de los apelantes se consignan dos errores:

1º. Que la corte cometió error al apreciar la prueba afir-
mando con absoluta seguridad en las instrucciones que dió al
jurado, que los testigos de la defensa nada sabían con respecto
a los hechos, porque ninguno de ellos estuvo presente en el
baile donde hirieron a Eugenio Chacón.

2º. Que la corte afirmó enfáticamente en sus instrucciones,
que cuando Eugenio Chacón levantó su varilla al ser cogido
por un brazo por Francisco Calero, lo hizo con el fin de defen-
derse, y en la creencia de que Calero no se conformaría con

tenerlo cogido por el brazo solamente, sino que, por el contrario, ese hecho sería el principio de una grave agresión.

El abogado de los apelantes fundó su caso en el informe oral que hizo ante este tribunal, en dos cuestiones: primera, que la acusación es insuficiente, y segunda, que la corte inferior cometió error en sus instrucciones al jurado expresando una opinión acerca de la prueba, y haciendo una exposición errónea de la prueba presentada en el juicio. Trataremos de combinar los señalamientos de *errores* del alegato de los apelantes con las cuestiones propuestas por el abogado en el informe oral durante la vista ante este tribunal.

En primer lugar, veamos si es o nó suficiente la acusación. Esta es en su parte principal como sigue:

"El fiscal formula acusación contra Francisco Calero y Juan Calero por un delito de atentado a la vida (*felony*), cometido de la manera siguiente: Los citados Francisco Calero y Juan Calero en Aguadilla, P. R., en uno de los días del mes de enero de 1911 de una manera maliciosa, criminal y alevosa, atacaron armados de cuchillo a Eugenio Chacón, con la intención de cometer asesinato, causándole varias heridas."

La excepción que se hace a esta acusación es que la misma no especifica las circunstancias que son necesarias para definir el delito de asesinato y especialmente que en ella no se alega premeditación, a pesar de que ésta es un elemento indispensable del delito de asesinato. En una acusación presentada por ese delito debe ciertamente alegarse la premeditación; sin embargo, esto no es necesario hacerlo en una acusación por el delito de atentado a la vida, siendo suficiente con que en tal caso la acusación se ajuste al estatuto y se observe substancialmente. Esto ha sido resuelto así en dos casos por la Corte Suprema de California en los que se imputaba el delito de ataque con intención de cometer violación. (Véase el caso de *The People* v. *Girr,* 53 Cal., 629, y el de *The People* v. *Gibson,* 53 Cal., 601.) Por consiguiente, de conformidad con los casos de California, debemos declarar que en este caso la acusación es completamente suficiente.

. En segundo término, veamos si las instrucciones dadas por la corte al jurado se ajustan o nó a la ley y si se hicieron de acuerdo con el estatuto.    La actual Legislatura pasó una ley enmendando el párrafo 8º. del artículo 233 del Código de Enjuiciamiento Criminal, que termina así:

"Entonces el juez, en corte abierta y a presencia de las partes y de los abogados, hará un resumen del caso omitiendo todas las circunstancias superfluas, llamando la atención del jurado hacia la cuestión esencial a resolver y puntos principales en discusión, expresando cuál ha sido la prueba practicada para sostenerlos, con las observaciones que estime necesarias para el gobierno del jurado, y expresando su opinión solamente sobre las cuestiones de derecho que surjan de la prueba."

Este estatuto simplemente aclara la ley, según existía en Puerto Rico desde la ocupación americana, o por lo menos desde la adopción del vigente Código de Enjuiciamiento Criminal.    Debemos, de conformidad con el mismo, examinar las instrucciones dadas por la corte al jurado para determinar si se han hecho o nó con arreglo al estatuto.    Los apelantes han formulado excepción a estas instrucciones porque, según se ha alegado, la corte cometió error al apreciar la prueba y al emitir una opinión sobre la misma.    Ciertamente que la corte tenía el derecho y era su deber de hacer un resumen del caso al jurado, o sea, recapitular la prueba omitiendo todas las circunstancias superfluas.    Estaba además la corte en el deber de referirse a las cuestiones principales envueltas en el caso así como a las proposiciones de ley más importantes de la causa, haciendo una exposición de la prueba propuesta en apoyo de las mismas, indicando además el juez aquellas observaciones que considerara necesarias para instruir al jurado, manifestándoles al propio tiempo su opinión únicamente en las cuestiones de ley que surjan de la prueba practicada por cualquiera de las partes en el juicio.    ¿Se hizo esto en el juicio?

Al comentar sobre las instrucciones se ha dicho en favor de los apelantes, que al dar el juez las instrucciones al jurado

afirmó de modo positivo que los testigos de la defensa no sabían absolutamente nada acerca de los hechos, puesto que ninguno de ellos se encontró presente en el baile en que fué herido Chacón.

De la prueba resulta que los testigos de la defensa, por lo menos uno o dos de ellos, estuvieron presentes en el baile, pero fué después de terminarse la contienda en que se le causaron las heridas a Chacón. Parece que estos testigos llegaron tarde y se encontraban en el patio o batey de la casa durante la mayor parte del tiempo, y que allí hablaron con Juan Calero. Cuando entraron al salón del baile la contienda había terminado y ya Chacón se encontraba sufriendo a consecuencia de las heridas, pues dos de los testigos manifestaron que vieron a Chacón herido. Probablemente es cierto todo esto, pero con ello se trata de probar que la corte se refirió correctamente a la prueba al decir que los testigos de la defensa, haciendo referencia a los tres mencionados, o sea, a José Santiago, Francisco Montalvo y Juan Batillo, no se encontraban presentes en el baile en que Chacón recibió las heridas. Y podemos indicar que si estuvieron presentes en el baile *en que* se causaron las heridas, no estuvieron presentes *cuando* éstas se produjeron, por lo que esta pequeña disparidad al hacer la exposición de la prueba es inmaterial.

Parece que fué el propósito de la defensa al proponer las declaraciones de estos tres testigos, probar una coartada con respecto a Juan Calero, mostrando que éste se encontraba en el batey de la casa y no en el cuarto del baile cuando se realizó el acometimiento. Pero la prueba es toda uniforme al afirmar que él se encontraba en el cuarto del baile cuando ocurrió la contienda, y que él fué el que causó por lo menos una de las heridas a Chacón, rompiéndosele el cuchillo al ocasionarle dicha herida, expresando a la vez su pesar por habérsele roto el cuchillo, y manifestando que hubiera matado a su víctima si no se le hubiera roto el cuchillo.

En tercer lugar, se alegó además, que la corte cometió error al sugerir que Chacón probablemente obró en defensa

propia cometiendo error al exponer la prueba con respecto a este punto. Se ha dicho que la corte afirmó enfáticamente que cuando Chacón levantó su varilla al ser cogido por el brazo por Francisco Calero, obró así con el fin de defenderse, y en la creencia de que Calero al cogerlo por el brazo no trataba solamente de cogerlo, sino que por el contrario, ese acto era el principio de una fuerte agresión.

La corte en realidad instruyó al jurado sobre este particular en la siguiente forma:

"Pero ¿qué ha dicho en definitiva Francisco Calero que venga a justificar los extremos alegados por la defensa? Creo que el jurado ha estado suficientemente atento para recordar los extremos de la declaración de Francisco Calero. El mismo ha declarado que si bien es cierto que Eugenio Chacón iba armado con una varilla de hierro, sin embargo, no le agredió con esa varilla. El que acometió a Eugenio Chacón fué Francisco Calero, quien, según su propia manifestación, dice que él se levantó y lo cogió por un brazo. El hecho de coger un individuo a otro violentamente por un brazo sin causa ni motivo de ninguna especie, constituye un simple acometimiento; y en ese momento, según la declaración del Calero, Eugenio Chacón levantó su varilla para defenderse en la creencia de que Francisco Calero no se hubiera conformado con tenerlo asido por un brazo, sino que tal hecho hubiera sido el principio de una fuerte agresión."

Creemos que la corte interpretó correctamente la prueba con respecto a este particular y explicó al jurado el uso que hizo Chacón de la varilla de paraguas que llevaba en su mano y que se le ha conocido con el nombre de varilla en las declaraciones. De todos modos, Chacón no acometió en manera alguna a Francisco Calero, según lo declaró este último, y si la exposición de la prueba con respecto a esta cuestión no fué estrictamente correcta, el error cometido por la corte al hacer el resumen de la prueba era muy insignificante y completamente inmaterial.

Finalmente vemos claramente de los autos que las defensas propuestas por los dos acusados eran distintas y completamente diferentes. Francisco Calero funda su absolución en

la alegación de que aunque él infirió las heridas, o alguna de ellas, a Eugenio Chacón, esto lo hizo en defensa propia. Juan Calero alega que no estaba presente en la contienda y se funda en la prueba de coartada, habiendo tratado de probar que se encontraba en la puerta del corral de la casa cuando se efectuaba el baile en que fué·herido Eugenio Chacón, y que dió origen a esta acusación. De un examen cuidadoso de los autos estamos convencidos de que ninguna de estas defensas quedaron justificadas por la prueba presentada durante el juicio. Además, si algún error se ha cometido en este caso, éste no efecta al fundamento de la imputación que se hace contra los acusados. Los errores insignificantes que no afectan al resultado del juicio, no ·son bastantes para exigir la revocación de la sentencia.

Se ha resuelto por la Corte Suprema de Illinois, que dicha corte no revocará una sentencia condenatoria, aún en un caso de pena de muerte, cuando de la evidencia resulta que ha habido prueba abrumadora de la culpabilidad del acusado, a menos que pueda decirse que mediante prueba suficiente podría surgir·una duda con respecto a la culpabilidad del acusado; y además, que debe confirmarse la sentencia, si se llega a la conclusión inevitable, de que el veredicto no pudo ser otro sino de culpabilidad, aun cuando ninguno de los errores que se han alegado se hubiera cometido. (*People* v. *Cleminson,* 250 Ill., 135; 95 N. E., 157.) El Dr. Wigmore al manifestar su aprobación de esta sentencia de la corte, se expresa como sigue: "Esta opinión llega al colmo de las modernas aspiraciones en la forma de considerar los tecnicismos de procedimiento." (VI. Ill. Law Rev. No. 4, p. 267.)

La enunciación de este principio y de una regla de procedimiento en apelación, que ha sido incorporada en un estatuto de Puerto Rico, tiene nuestra entera aprobación. (Véase la sesión especial, Leyes de 1904, pág. 10; Ley de 30 de mayo de 1904.)

De un examen cuidadoso y completo estudio de los hechos que se han desarrollado en este caso, así como de la ley apli-

cable a los mismos, somos claramente de opinión de que los apelantes fueron culpables del delito de que se les acusó, habiendo la corte inferior llegado a una debida conclusión y dictado correctamente su sentencia en el presente caso que debe ser confirmada.

*Confirmada.*

Jueces concurrentes: Sres. Presidente Hernández, y Asociados del Toro y Aldrey.

El Juez Asociado Sr. Wolf, no tomó parte en la resolución de este caso.